*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMERICAN FAMILY PREPAID LEGAL CORPORATION,
           *Plaintiff-Appellant,*

           *v.*

COLUMBUS BAR ASSOCIATION,
           *Defendant-Appellee.*

> No. 06-3758

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00459—Gregory L. Frost, District Judge.

Argued: April 25, 2007

Decided and Filed: July 13, 2007

Before: SILER and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

---

## COUNSEL

**ARGUED:** Philomena M. Dane, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellant. Constance M. Greaney, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellee. **ON BRIEF:** Philomena M. Dane, Jessica D. Goldman, Emily E. Root, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellant. Constance M. Greaney, Joyce D. Edelman, Jacob H. Huebert, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellee. John N. MacKay, SHUMAKER LOOP & KENDRICK, Toledo, Ohio, for Amicus Curiae.

---

## OPINION

---

SILER, Circuit Judge. American Family Prepaid Legal Corporation ("American Family") appeals the district court's dismissal, on abstention grounds, of its constitutional due process challenge to the Ohio Supreme Court rule governing the unauthorized practice of law. Under Rule VII, Section 5(a) of the Ohio Supreme Court Rules for the Government of the Bar (the "Rule"), the unauthorized practice of law committee of any bar association may file a motion for an interim cease and desist order with the Ohio Supreme Court, pending resolution of whether the party is engaged in the unauthorized practice of law. Because American Family has not met its burden of showing

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

that its due process challenge to the Rule will not be resolved in the course of the current proceedings under Ohio law, we AFFIRM the district court's decision to abstain based on *Younger v. Harris*, 401 U.S. 37 (1971).

## I.  BACKGROUND

American Family sells memberships in its prepaid legal services plan to residents of Ohio. In November 2002, the Columbus Bar Association ("CBA") filed a complaint against American Family with the Ohio Supreme Court's Board of Commissioners on the Unauthorized Practice of Law (the "UPL Board"), pursuant to Rule VII of the Ohio Supreme Court Rules for the Government of the Bar ("Gov. Bar R. VII").  The complaint was docketed as UPL Case No. 02-10 ("UPL 02-10") and alleged that American Family was engaging in the unauthorized practice of law by performing certain services, such as selling, marketing, and/or preparing wills.  In March 2003, American Family and the CBA entered into a Consent Agreement providing that American Family would alter its business practices and refrain from the challenged conduct.[1]  In November 2004, believing American Family had breached the Consent Agreement by engaging in the challenged conduct, the CBA filed a motion with the UPL Board to reopen UPL 02-10.  The UPL Board denied the CBA's motion.

In March 2005, the CBA filed a motion with the Ohio Supreme Court to enforce the Rule.[2] American Family filed a motion in opposition to CBA's motion to enforce the Rule, pursuant to Gov. Bar R. VII, § 5(a)(A)(2).  However, American Family failed to present its constitutional due process claims to the Ohio Supreme Court in that motion.  Thereafter, on April 12, 2005, the Ohio Supreme Court granted the CBA's motion, ordering American Family to "cease and desist engaging in the unauthorized practice of law" ("Interim Order"), and ordering the UPL Board to "hold a hearing to consider whether the March 2003 settlement agreement had been violated . . . and file a report with the Court."

On April 18, 2005, pursuant to Gov. Bar R. VII, § 5(a)(C)(1), American Family filed a Motion to Clarify, Dissolve, Modify and/or Stay the Court's April 12, 2005 Interim Order ("Motion to Clarify").  In its Motion to Clarify, American Family included the following due process challenge:

> Alternatively, the [Interim] Order should be stayed in its entirety and the matter remanded to the [UPL] Board for a full hearing to determine whether [American Family] [is] engaged in the unauthorized practice of law.  Otherwise, [American Family] will be placed out of business without [the CBA] having to prove its allegations in a hearing on the merits, a classic and unlawful infringement of constitutional due process rights. *See, e.g., Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 105 S. Ct. 1487 (holding that the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (emphasis in original).

---

[1]The Consent Agreement provided that the CBA would dismiss its complaint but reserved the right to enforce the Consent Agreement by filing a motion to reopen with the UPL Board.

[2]The Rule permits any regularly organized bar association to file a motion for an interim cease and desist order with the Ohio Supreme Court when substantial, credible, evidence demonstrates that an individual or entity is engaging in the unauthorized practice of law.  Gov. Bar. R. VII, § 5(a).

The Motion to Clarify was denied without comment by the Ohio Supreme Court on May 20, 2005. The matter of the whether American Family violated the Consent Agreement is currently pending before the UPL Board as UPL 02-10.

On June 10, 2005, the CBA filed a second complaint against American Family with the UPL Board, alleging that it had again engaged in the unauthorized practice of law ("UPL 05-02"). On September 15, 2005, the Ohio Supreme Court ordered UPL 05-02 held in abeyance pending a formal hearing in UPL 02-10.

American Family filed the present action in federal district court on May 11, 2005, alleging that

the Rule on its face violates the federal constitutional guarantee of procedural due process because the Rule does not provide a sufficient pre-deprivation hearing or an adequate post-deprivation remedy to protect [its] liberty and property interests in freedom of speech and association, freedom to pursue lawful business and business goodwill.

The CBA moved for dismissal on abstention grounds. During the pendency of American Family's lawsuit, however, the CBA agreed not to file a motion with the Ohio Supreme Court to hold American Family in contempt for failing to comply with the Interim Order. On May 9, 2006, the district court granted the CBA's motion to dismiss based on *Younger* abstention. As a result, the CBA is no longer bound by the agreement not to bring contempt proceedings against American Family. American Family filed this timely appeal of the decision of the district court.

## II. ANALYSIS

### A. *Younger* Abstention Criteria

We have mandated three requirements for a district court to properly invoke *Younger* abstention: "1) there must be on-going state judicial proceedings; 2) those proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (quotation marks and citation omitted). If these prerequisites are satisfied and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."[3] *Id.* (quoting *Middlesex County*

---

[3] American Family adds a heightened standard for *Younger* abstention at the outset of its brief–namely, that "the federal action [must also] seek[] to overturn the result of a state proceeding," and "that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." (emphasis omitted). However, the cases relied upon by American Family are distinguishable because the proceedings were legislative rather than judicial in nature. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 373 (1989) ("Viewed, as it should be, as no more than a state-court challenge to completed *legislative* action, the [] suit comes within none of the exceptions that *Younger* and later cases have established.") (emphasis added); *GTE North, Inc. v. Strand*, 209 F.3d 909, 920 (6th Cir. 2000) (finding *Younger* abstention inapplicable because the on-going proceeding was not "'judicial' in nature"); *Monongahela Power Co. v. Schriber*, 322 F. Supp. 2d 902, 915 (S.D. Ohio 2004) (failing to abstain in light of on-going state court proceedings where the underlying state commission orders were legislative in nature).

In *Middlesex*, the Supreme Court held that state bar disciplinary proceedings were of a character to call *Younger* abstention into play because of the important state interest in the outcome of those proceedings. *See* 457 U.S. at 432-35. "Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claim." *Id.* at 432 (quotation marks and citation omitted). Neither the Supreme Court nor this court has departed from the standard set forth in *Middlesex*, where, like here, the state bar proceedings are judicial in nature. *See, e.g., Squire*, 469 F.3d at 555-57 (setting forth *Middlesex* factors as standard for *Younger* abstention); *Fieger v. Thomas*, 74 F.3d 740, 744-50 (6th Cir. 1996) (same); *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 722-24 (6th Cir. 1993) (same). Therefore, American Family's reliance on cases that involve federal challenges to legislative, non-bar related proceedings is misplaced. *Wooley v. Maynard*, 430 U.S. 705 (1977), also cited by American Family, is

*Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)). We review de novo a district court's decision to invoke *Younger* abstention. *Id.* (citing *Berger*, 983 F.2d at 721).

In *Squire*, we considered whether the district court properly invoked *Younger* abstention to a constitutional challenge to Rules II and V of the Ohio Supreme Court Rules for the Government of the Bar ("Gov. Bar R. II and V").[4] *Id.* at 553. The complaint charged that the Disciplinary Counsel for the Ohio Supreme Court ("Disciplinary Counsel"), who investigates and prosecutes judicial grievances filed under Gov. Bar R. II and V, violated the complainant judge's due process rights by failing to provide the names of all those contacted by the Disciplinary Counsel in the course of its investigation against her. *Id.* at 554.

### 1.          *Ongoing state judicial proceedings*

As we noted in *Squire*, "[t]he Ohio state constitution vests its supreme court with original jurisdiction over the '[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law.'" *Id.* at 555 (quoting Ohio Const. art. IV, § 2(B)(1)(g)). We also found as relevant that members of the Board of Commissioners on Grievance and Discipline ("Grievance Board"), with whom the Disciplinary Counsel files its complaint, are appointed by the Justices of the Ohio Supreme Court. *Id.* Finally, we considered that the Grievance Board, with the approval of the Supreme Court, appoints the Disciplinary Counsel to investigate allegations of judicial misconduct in concluding that such investigations are "an adjudicative, rather than a legislative function." *Id.* at 555-56 (citing *Middlesex*, 457 U.S. at 432).

In the instant case, it is beyond dispute that regulating the unauthorized practice of law is a "matter[] relating to the practice of law" and is therefore within the constitutionally proscribed jurisdiction of the Ohio Supreme Court. *See id.* Furthermore, like the Grievance Board and Disciplinary Counsel in *Squire*, the UPL Board serves as an arm of the Ohio Supreme Court. Not only is the UPL Board appointed by the Justices of the Ohio Supreme Court, Gov. Bar R. VII, § 1, but its final report is subject to review by the Ohio Supreme Court, Gov. Bar R. VII, § 19. *See Berger*, 983 F.2d at 723 (noting that the Ohio Supreme Court ultimately decided what discipline should be given as a factor showing the proceeding was judicial in nature under *Younger*). Thus, the Ohio procedures are judicial in nature. *See Fieger*, 74 F.3d at 744 (holding that state disciplinary procedures against an attorney are "judicial in nature for purposes of *Younger* abstention").

American Family attempts to distinguish *Middlesex* and its progeny by pointing out that it is not seeking to avoid Ohio's authority to prosecute it for the unauthorized practice of law, but is only challenging the constitutionality of the Interim Order. However, this argument lacks merit because it seeks to divide the Interim Order as a distinct judicial action from the underlying investigation into the unauthorized practice of law. The Interim Order was entered based on allegations that American Family had breached the Consent Agreement by engaging in the unauthorized practice of law. Currently pending before the UPL Board are UPL 02-10, addressing whether American Family violated the Consent Agreement, and UPL 05-02, addressing whether American family is engaged in the unauthorized practice of law. The Interim Order was a step in the on-going judicial proceedings against American Family and is necessary to temporarily safeguard Ohio's citizens against the unauthorized practice of law pending adjudication of the matter after a full hearing on the merits.

---

distinguishable as it involved a state's interest in its license plate motto, not the regulation of law within its borders–an interest this circuit has recognized as "compelling." *See Blanton v. United States*, 94 F.3d 227, 234 (6th Cir. 1996) (citation and quotation marks omitted).

[4]Rules II and V govern disciplinary procedures against Ohio's state judiciary. *See* Gov. Bar R. II; Gov. Bar R. V.

### 2.     *Important state interest*

In *Squire*, we noted the Supreme Court's holding that "the state 'has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses.'" *Squire*, 469 F.3d at 556 (quoting *Middlesex*, 457 U.S. at 434). We also reiterated that "'[t]he policies of comity and federalism counsel that because [the state] has such an important interest in regulating its own bar, a state forum should have the first opportunity to review [the state's] rules of lawyer conduct and procedures for lawyer discipline.'" *Id.* (quoting *Fieger*, 74 F.3d at 745).

Here, Ohio has an equally important interest in regulating the unauthorized practice of law. "'A state's interest in regulating the practice of law within its borders is compelling, because lawyers are essential to the primary governmental function of administering justice.'" *Blanton*, 94 F.3d at 234 (citation omitted). "[C]omity and federalism" mandate that Ohio should have the first opportunity to decide whether the Rule–a procedure outlined by Ohio's Bar Rules to safeguard Ohioans from the unauthorized practice of law–is unconstitutional. Therefore, the present situation involves precisely the type of important state interest that *Younger* abstention was intended to cover.

### 3.     *Adequate opportunity to raise constitutional challenges*

"A plaintiff must have 'an adequate opportunity in the state proceedings to raise constitutional challenges' in order to satisfy the third prong of the *Younger* abstention test." *Squire*, 469 F.3d at 556 (quoting *Berger*, 983 F.2d at 723). "Abstention is appropriate 'unless state law *clearly bars* the interposition of the constitutional claims.'" *Id.* (emphasis added) (quoting *Fieger*, 74 F.3d at 745). The burden is on American Family to show that state law barred presentation of its constitutional claims. *Id.*

In *Squire*, the plaintiff argued that she was denied the opportunity to raise her due process challenge at the precomplaint stage of the state proceedings because she was not provided with the names of all persons contacted in the course of the investigation against her. *See id.* We found the plaintiff's argument unavailing because it conflicted with *Middlesex*, since the plaintiff failed to raise her constitutional claim in the state disciplinary proceedings, but, instead, took her claim directly to federal district court. *See id.* at 557. Even though there was no specific procedure in place under the Ohio Bar Rules for bringing a constitutional challenge at the precomplaint stage of the grievance process, we found dispositive that the plaintiff had failed to show that the Disciplinary Counsel would not have considered her constitutional challenge had it been brought. *Id.*

American Family faces two obstacles in overcoming *Younger's* third prong. First, it never raised its constitutional claims in its brief in opposition to the CBA's motion for a cease and desist order. Although American Family contends this is without consequence as the claims were eventually raised in its Motion to Clarify, filed after the Ohio Supreme Court granted the Interim Order, we have considered arguments raised for the first time in similar motions deemed waived. *See Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (holding that defendants waived issue where it was raised for first time in motion for reconsideration after injunction had already been issued); *see also Jones v. Unibilt Indus., Inc.*, 2004-Ohio-5983 (Ct. App. 2004) (not reported in N.E.2d) (arguments raised for the first time in a motion for reconsideration deemed waived). Because American Family did not properly raise its due process claim in the state proceedings, it cannot show that it was not afforded an adequate opportunity to raise its constitutional claims. *See Squire*, 469 F.3d at 557; *see also Berger*, 983 F.2d at 723 (holding that *Younger* abstention was appropriate because the "plaintiffs had the opportunity to present their constitutional claims in their answer to the [disciplinary] complaint against them").

Second, as we explained in *Fieger*, "federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court." 74 F.3d at 78 (quoting *Ohio Civil*

*Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 627 (1986)). UPL 02-10 and UPL 05-02 are currently pending before the UPL Board. The final report of the UPL Board is subject to review by the Ohio Supreme Court. *See* Gov. Bar. R. VII, § 19(a). Nothing in Gov. Bar R. VII prohibits a party from raising constitutional claims during the Ohio Supreme Court's review of the UPL Board's final report. Absent evidence to the contrary, there is no reason to presume that the Ohio Supreme Court would not entertain American Family's due process claim during its review of the UPL Board's findings. *See Squire*, 469 F.3d at 557 ("An absence of explicit procedures however, does not establish that [the plaintiff] had an inadequate opportunity to raise her [constitutional] claim."); *Fieger*, 74 F.3d at 749 ("We are confident that the Michigan Supreme Court takes constitutional challenges to its regulations very seriously."). Thus, the third prong of *Younger* is met.

## B. *Younger* Abstention Exceptions

As previously noted, we have recognized several exceptions to *Younger* abstention "such as bad faith, harassment, or flagrant unconstitutionality." *Squire*, 469 F.3d at 557 (citation and quotation marks omitted). Here, American Family has not raised bad faith or harassment, but claims that an exception to *Younger* abstention exists because the Rule "plainly does not provide for a meaningful and prompt post-deprivation hearing." However, as we explained of the underlying due process challenge in *Squire*, the district court "must abstain" where, like here, the plaintiff is "involved in [an ongoing state judicial] proceeding" and "has an adequate opportunity to present her constitutional claim in that proceeding." 468 F.3d at 558. Therefore, this argument is without merit.

American Family cites another exception to *Younger* abstention narrowly carved out in *Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003). *Habich* held that *Younger* abstention was inappropriate where the issues raised in the federal lawsuit were "collateral" to the state proceedings–that is–the plaintiff's suit would not be resolved by the case-in-chief or as an affirmative defense to the state court proceedings. *Id.* at 531-32. Although this exception appears applicable at first glance, a closer look renders *Habich* inapplicable as evidenced by American Family's brief. American Family correctly sets forth the *Mathews*[5] factors as the relevant inquiry in reviewing whether a due process violation has occurred. The *Mathews* factors include: 1) the respondent's interest; 2) the government's interests and fiscal and administrative burdens; and 3) the risk of erroneous deprivation. 424 U.S. at 335. American Family suggests that these factors can be evaluated "without ever touching on the factual and legal issues within the jurisdiction of the UPL Board."

However, in its discussion of the *Mathews* factors, American Family correctly notes Ohio's interest "in prohibiting the unauthorized practice of law and protecting its citizens against persons who hold themselves out to be lawyers but are not licensed." It further explains that in this case, "Ohio . . . does not have an interest in prohibiting the lawful conduct of companies engaged merely in the sale of memberships in prepaid legal plans that provide access to properly-licensed attorneys." This is the very issue that is being adjudicated by the UPL Board–whether American Family's services are lawful or constitute the unauthorized practice of law. Therefore, by American Family's admission, any undertaking of its due process claim involves adjudicating issues that are intertwined with the state court proceeding. Accordingly, this case does not fit into the collateral issue exception of *Habich*.

---

[5] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)

Because the three-part *Younger* abstention test has been satisfied and none of the *Younger* exceptions are implicated, the district court did not err by abstaining in this case.[6]

**AFFIRMED.**

---

[6]American Family's reliance on *Barry v. Barchi*, 443 U.S. 55 (1979), and *Gershenfeld v. Justices of the Supreme Court of Pa.*, 641 F. Supp. 1419 (E.D. Pa. 1986), does not compel a different result, as neither of those cases discussed *Younger* abstention.