The STATE of Ohio, Appellee,

v.

RUTLAND, Appellant.

[Cite as *State v. Rutland,* 152 Ohio App.3d 59, 2003-Ohio-1425.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01–CA–96.

Decided March 18, 2003.

60

Dionne M. Almasy, Youngstown City Prosecutor, for appellee.

Charles E. Curry Sr., for appellant.

---

GENE DONOFRIO, Judge.

{¶ 1} Defendant-appellant, Jessie Rutland, appeals from a judgment of the Youngstown Municipal Court convicting him of performing security services without a license or registration, impersonating a peace officer or private police

officer, improper handling of a firearm in a motor vehicle, having improper lights on his motor vehicle, and having horns, sirens, or other warning devices on his motor vehicle following a bench trial.

{¶ 2} On March 2, 2001, Youngstown Police Officer Dan Mikus was working an off-duty job at National City Bank in Youngstown. He noticed appellant pull into the parking lot in a car with a red and blue light bar on top and the words "Law Enforcement" on the car. Appellant exited the car and entered the bank. Appellant was wearing a uniform with patches and a badge, which identified him as a member of a group called Mahoning County Constables, Inc. ("MCCI"). Appellant was also armed with a nine-millimeter gun in his holster.

{¶ 3} Officer Mikus testified that he remembered a conversation during roll call in which his desk sergeant had told him to watch for people who called themselves constables because, according to the sergeant, they were not permitted to perform security services in Youngstown. Upon seeing appellant, Officer Mikus radioed other officers. When appellant exited the bank, the officers stopped him and eventually arrested him for improper handling of a firearm in a motor vehicle and cited him for the above traffic violations. Appellee later charged appellant with performing security services without a license or registration and impersonating a peace officer or private police officer.

{¶ 4} Appellant proceeded to a bench trial on April 17, 2001. After considering the evidence, the trial court found appellant guilty on all charges. The case proceeded to sentencing on May 10, 2001. The court sentenced appellant as follows. For performing security services without license or registration in violation of R.C. 4749.13(A) and 4749.99(A), the court fined appellant $150 plus costs, costs suspended, and sentenced appellant to 60 days' incarceration, suspended. For impersonating a peace officer or private police officer in violation of R.C. 2921.51(B), the court sentenced appellant to 120 days' incarceration, suspended, placed him on two years' nonreporting probation, and fined appellant $500 plus costs, costs suspended. For improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16, the court fined appellant $150 plus costs, sentenced him to 30 days in jail, suspended, and placed him on two years' nonreporting probation. For having improper lights on his motor vehicle in violation of R.C. 4513.17(D), the court fined appellant $25 plus costs. For having horns, sirens, or other warning devices on his motor vehicle in violation of R.C. 4513.21, the court fined appellant $25 with costs suspended. Appellant filed his timely notice of appeal on May 17, 2001.

{¶ 5} At the outset, we should note that plaintiff-appellee, the state of Ohio, has failed to file a brief in this matter. Therefore, we may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App.R. 18(C).

{¶ 6} Appellant raises three assignments of error, the first of which states:

{¶ 7} "The trial court erred when it found appellant guilty of performing security services without license or registration when the prosecutor produced no evidence or testimony that defendant ever performed any such services as they are defined in Ohio Revised Code."

{¶ 8} Appellant argues that appellee failed to produce sufficient evidence to support his conviction for performing security services without a license or registration. He contends that appellee failed to demonstrate that he provided security services. Appellant argues that appellee produced no evidence as to how he was dressed or as to what type of car he drove when he escorted the funeral procession. He also claims that escorting a funeral procession is not the same as providing security services. Additionally, since performing security services without a license or registration is a misdemeanor, appellant asserts that the officers could not arrest him because he did not commit the offense in their presence.

{¶ 9} Generally, an officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. *State v. Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104. Appellant apparently is confused as to why he was arrested. Officer Mikus testified that the officers arrested appellant for improper handling of a firearm in a motor vehicle. This offense occurred in Officer Mikus's presence. Appellee later filed a complaint against appellant for performing security services without a license or registration. Furthermore, even if the officers had arrested appellant for performing security services without a license or registration, the arrest would not necessarily invalidate his conviction. "[A]n illegal arrest does not invalidate a subsequent conviction which is otherwise proper." Id. Consequently, we shall move on to determine whether sufficient evidence supports appellant's conviction for performing security services without a license.

{¶ 10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d 668.

{¶ 11}   The trial court found appellant guilty of violating R.C. 4749.13(A), which provides:

{¶ 12}   "No person shall engage in the business of private investigation, the business of security services, or both businesses in this state unless he is licensed pursuant to this chapter."

{¶ 13}   Thus, appellee was required to prove that (1) appellant engaged in the business of security services and (2) appellant was not licensed to perform security services.   R.C. 4749.01(D)(1) defines "business of security services" as "[f]urnishing, for hire, watchmen, guards, private patrolmen, or other persons whose primary duties are to protect persons or property."

{¶ 14}   Appellant argues that appellee failed to present evidence that he provided security services while dressed in his constable uniform.   Appellant does not argue that appellee failed to provide evidence that he was not licensed to perform security services.   Officers Mikus and Ragan testified that appellant was dressed in uniform when they detained him after exiting the bank.   Officer Mikus described the uniform as being similar to that worn by the sheriff's department deputies.   He stated that the uniform consisted of a black shirt with patches, a chain, and captain's bars;   a hat with a badge that said "constables";   a holster with a gun;   handcuffs and a handcuff case;   and black pants with stripes.   Additionally, Officer Mikus testified regarding the appearance of the car appellant was driving.   He stated that the car had the words "State of Ohio constable" on it and had red and blue light bank bars.   Officer Mikus also testified that the car was a blue Crown Vic similar to the kind the police department uses.

{¶ 15}   Officer Ragan testified that he spoke with appellant as he took possession of appellant's gun.   Appellant told Officer Ragan that he had just finished working a funeral at Mason Funeral Home, or directing the funeral procession from the funeral home to the gravesite.   Detective Ross also testified that appellant told him that he was coming from escorting a funeral service.   Additionally, appellant introduced MCCI's articles of incorporation, which state as one of their purposes: "To provide contracting authorities with good and reliable law enforcement service to protect life, liberty and property and to provide other professional services for hire to facilitate both criminal and civil investigations, security and protection for the benefit of both the public and private legal entities."

{¶ 16}   Since appellant admitted to the officers that he was just coming from a funeral service, and in viewing the evidence in the light most favorable to the prosecution, it was proper for the court to draw the inference that appellant was wearing his MCCI uniform and driving the car with the lights and sirens while he was acting as the funeral escort.   Furthermore, whether appellant was engaged in providing a security service while he was escorting the funeral procession is a

question best left to the trier of fact. Given the above evidence, adequate evidence exists from which a rational trier of fact could have found the essential elements of the crime charged. Accordingly, appellant's first assignment of error is without merit.

{¶ 17} Appellant's second assignment of error states:

{¶ 18} "The trial court erred when it found appellant guilty of impersonating a peace officer or private police officer because appellant never held himself out to be anything other than a member of Mahoning County Constables, Inc. and because O.R.C. 2921.51 clothes him with authority to represent himself as such."

{¶ 19} Appellant argues that he never presented himself as anything other than a member of MCCI. He asserts that he never held himself out to be a "peace officer" within the meaning of R.C. 2921.51(A). Appellant claims that since MCCI is incorporated in the state of Ohio and since the Secretary of State certified its articles of incorporation, he was operating under a state grant of authority to do business as MCCI. As stated above, MCCI's articles of incorporation state as one of the corporation's purposes: "To provide contracting authorities with good and reliable law enforcement service to protect life, liberty and property and to provide other professional services for hire to facilitate both criminal and civil investigations, security and protection for the benefit of both the public and private legal entities."

{¶ 20} Appellant's argument essentially asserts that appellee failed to present evidence on all of the elements of impersonating a peace officer or private police officer.

{¶ 21} R.C. 2921.51(B) provides: "No person shall impersonate a peace officer or a private police officer." The statute defines a "peace officer" as "a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state, a member of a police force employed by a metropolitan housing authority * * *, a member of a police force employed by a regional transit authority * * *, a state university law enforcement officer * * *, an Ohio veterans' home police officer * * *, a special police officer employed by a port authority * * *, or a state highway patrol trooper and whose primary duties are to preserve the peace, to protect life and property, and to enforce the laws, ordinances, or rules of the state or any of its political subdivisions." R.C. 2921.51(A)(1). The statute defines a "private police officer" as "any security guard, special police officer, private detective, or other person who is privately employed in a police capacity." R.C. 2921.51(A)(2). To "impersonate" means to "act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is

that particular person or is a member of that class of persons." R.C. 2921.51(A)(3).

{¶ 22} Although MCCI may be a validly recognized business entity, its corporate form does not exempt it from complying with state laws. A corporation, no matter what its purpose, cannot hire an individual, make him a constable, and give him a loaded gun to carry on his person. The employees still must have the necessary license and comply with the applicable statutes.

{¶ 23} R.C. 4749.03 requires all private security guard providers and private investigators, whether individuals or corporations, to be licensed according to the statute. Kenneth Affeldt, an assistant attorney general with the business and government regulation section, testified that neither appellant nor MCCI is licensed as a private security guard provider or as a private investigator. Thus, appellant was not licensed to provide private security services or private investigation services.

{¶ 24} Additionally, appellant alleged that he was a constable by his uniform and car, both of which had the word "constable" on them. There are two types of constables recognized by the Ohio Revised Code. The first type is a peace officer pursuant to R.C. 109.71. R.C. 109.71(A) provides the definition of "peace officer." It includes a "township constable, who is commissioned and employed as a peace officer by a political subdivision of this state or by a metropolitan housing authority." R.C. 109.71(A)(1). Appellant was not commissioned or employed as a peace officer by a political subdivision of the state. He was employed by a private corporation. Thus, appellant was not a township constable under R.C. 109.71(A). The second type of constable is a special constable, which is court-appointed. R.C. 1711.35 and 1901.141. Again, appellant was not court-appointed: he was employed by MCCI. Court-appointed constables "shall hold a valid certificate issued by the Ohio peace officer training commission." R.C.1901.141(A). Appellant does not hold a valid certificate. John Martin, the supervisor of certification for the Ohio Peace Officer Training Commission, testified that appellant does not hold a valid certificate. Martin further testified that since appellant did not hold a valid certificate, he did not have the credentials to be appointed as a court constable. Thus, appellant was not a court-appointed special constable.

{¶ 25} The officers' testimony discussed above demonstrated that appellant assumed the identity of and wore the uniform of a constable with the purpose to make others believe he was a constable. Not only did his uniform state that he was a constable, the car he drove also had the word "constable" on the side. The record provides evidence going to all of the essential elements of impersonating a

peace officer or private police officer. Accordingly, appellant's second assignment of error is without merit.

{¶ 26} Appellant's third assignment of error states:

{¶ 27} "The trial court erred when it sentenced defendant to jail and fined him in excess of the statutory limit."

{¶ 28} Appellant contends that his sentence for impersonating a peace officer or private police officer exceeds that allowed by law.

{¶ 29} For his conviction of impersonating a peace officer or private police officer, the trial court sentenced appellant to 120 days' incarceration, which it suspended, and placed him on two years' nonreporting probation. The court additionally fined appellant $500 plus costs, suspending the costs.

{¶ 30} Impersonating a peace officer or private police officer in violation of R.C. 2921.51(B) is a fourth-degree misdemeanor. R.C. 2921.51(G). The maximum jail sentence for a fourth-degree misdemeanor is 30 days. R.C. 2929.21(B)(4). The maximum fine for a fourth-degree misdemeanor is $250. R.C. 2929.21(C)(4).

{¶ 31} In sentencing appellant for this offense, the trial court did not follow the applicable sentencing statute. The court sentenced appellant in excess of 30 days and fined him in excess of $250. Accordingly, appellant's third assignment of error has merit.

{¶ 32} For the reasons stated above, appellant's convictions are affirmed. However, appellant's sentence for impersonating a peace officer or private police officer is modified to 30 days, 30 days suspended, two years' nonreporting probation, and a $250 fine plus costs, costs suspended.

Judgment accordingly.

VUKOVICH and DEGENARO, JJ., concur.