NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-4394

_____

PETER J. CRESCI; JOHN DOES 1-3; XYZ CORPS. 1-5

v.

BCB COMMUNITY BANK; TIMOTHY J. MCNAMARA, Individually;
CHARLES CENTINARO, Individually; OFFICE OF ATTORNEY ETHICS;
JOHN DOES 1-5; JANE DOES 1-3; ABC CORP. 1-3

PETER J. CRESCI,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-16-cv-04780)
District Judge: Honorable Jose L. Linares

_____

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2018

Before: MCKEE, AMBRO, and RESTREPO, Circuit Judges

(Opinion filed: March 30, 2018)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Peter J. Cresci sued the New Jersey Office of Attorney Ethics (the "Ethics Office") and two of its employees (collectively, the "Ethics Office Defendants") alleging they initiated attorney ethics grievances in bad faith to harass him and violated federal and state law while conducting the investigations. He appeals the District Court's stay of his complaint under the abstention principles in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. For the reasons below, we affirm.

## I.  Background

Because we write solely for the parties, we note only those facts necessary to our decision. The Ethics Office discharges the Supreme Court of New Jersey's constitutional responsibility to supervise and discipline attorneys admitted to practice law in New Jersey. *See Robertelli v. N.J. Office of Att'y Ethics*, 134 A.3d 963, 967 (N.J. 2016); N.J. Ct. R. 1:20–1. Defendant Charles Centinaro is the Director of the Ethics Office, and Defendant Timothy J. McNamara is an Assistant Ethics Counsel with the Ethics Office. *See* N.J. Ct. R. 1:20–2. As noted below, Cresci also sues BCB Community Bank.

Cresci asserts that the Ethics Office Defendants initiated attorney ethics grievances to harass him. He brings federal and state claims and seeks damages, declaratory relief, and injunctive relief. The District Court (1) abstained from exercising jurisdiction under *Younger* and its progeny, (2) stayed and administratively terminated the action, and (3) left Cresci the option to reopen the case after he can demonstrate that he has exhausted the administrative and appellate remedies available to him in the related state proceedings.

2

Cresci, an attorney, earlier sued Hudson County, New Jersey, on behalf of others. He claims the government officials implicated in these suits—who are not defendants here—retaliated by bringing criminal charges against him. Indeed, the Hudson County Prosecutor's Office charged Cresci with third-degree theft and forgery in 2013. *Cresci v. Aquino*, No. CV134695KMJBC, 2017 WL 1356322, at *1 (D.N.J. Apr. 10, 2017) ("*Cresci I*"). It appears that he pleaded guilty to falsifying records in exchange for dismissal of the theft and forgery charges. *Id.* at *2. Cresci thereafter sued the County and the arresting officers in federal District Court, alleging false arrest, excessive force, false imprisonment, abuse of process, and First Amendment retaliation. In *Cresci I*, the complaint was dismissed for failure to state a claim. *Id.* at * 11.

Cresci ties the criminal complaints brought by Hudson County to the Ethics Office Defendants by alleging a sprawling conspiracy. For example, he asserts that Centinaro (as noted, now the Director of the Ethics Office) worked in the Hudson County Prosecutor's Office, which was led by a Gaetano Gregory, who is married to a Susan Gyess, who was hired by one of the officers who brought the criminal charges. Cresci traces similarly the other Defendants' supposed interest in preventing him from bringing suits against the County.

According to Cresci, after Hudson County failed to achieve its purposes through the criminal system, some of the Ethics Office Defendants (Cresci has not specified which ones) purportedly turned to the Ethics Office's attorney disciplinary process and filed or caused to be filed against him at least four grievances (he does not say which grievances). He asserts that a former Ethics Office investigator determined that these

3

grievances were retaliatory and politically motivated. He recalls this lawyer stated to him, "[T]hese people really don't like you, have you thought about moving from Bayonne?" He says that the Ethics Office dismissed the grievances, with the last dismissal in early 2013.

Whatever the facts may be, two things stand out. First, Cresci claims that during the Ethics Office's investigation of one of these grievances (again, he does not say which grievance) a Mr. Bethka (apparently an Ethics Office employee) obtained Cresci's banking records from BCB Community Bank in violation of 15 U.S.C. § 6821. Second, he claims an unidentified person deleted unidentified digital evidence in violation of the Computer Fraud and Abuse Act along with the Wiretap Act. *See* 18 U.S.C. § 1030; *id.* §§ 2511, 2701, 1343.

Fast forward to more recent times. Cresci claims the Ethics Office Defendants solicited others to file more grievances against him so that they could harass him by re-investigating the previously dismissed matters. This is a good point at which to get one dispute out of the way. Despite Cresci's contrary assertion, state attorney disciplinary proceedings *are* pending against him. His pleadings and briefing where he alleges that the Ethics Office Defendants filed attorney ethics grievances, started proceedings against him, and are unlawfully re-investigating earlier grievances, conclusively establish the existence of parallel proceedings. *See, e.g.*, Cresci's Br. 19 ("The notion of 'comity' does not apply here as there is no state function, only individual actors misusing their positions to abuse the process for which authority they were given, i.e. in egregious violation of any reasonable time goals for such investigations . . . ."). The Director of the Ethics

4

Office acknowledged that his Office is investigating Cresci. Defs.' Resp. to *Sua Sponte* Order to Show Cause on Jurisdiction 2.

Also, we note that the docket for the Ethics Office lists four open disciplinary matters in which formal hearings are pending against Cresci for allegations that he knowingly misappropriated money from his clients in violation of New Jersey Rule of Professional Conduct 1.15. Ethics Office, *Statewide Pub. Hearing List*, 39 (Jan. 31, 2018), https://www.judiciary.state.nj.us/attorneys/assets/oae/publichearinglist.pdf; *see Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket."). However, these dockets were all opened in October 2017 after Cresci filed his complaint. *Id.*

Cresci repeatedly represents that there are no ethics "complaints" pending against him. *See*, *e.g.*, Cresci's Br. 10, 14, 16, 19, 24, 29; Compl. 8, 10, 11, 24; Pls.' Resp. to *Sua Sponte* Order to Show Cause on Jurisdiction 10, 14. If no complaint is pending, that is because in New Jersey an attorney ethics complaint is issued after the Ethics Office has completed an investigation into the potential merits of a grievance. N.J. Ct. R. 1:20 and N.J. Ct. R. 1:20–4(a). The Ethics Office must now be investigating grievances. *See* N.J. Ct. R. 1:20–3(e)(1) and (g)(1). Cresci admits as much by alleging it is re-investigating grievances against him.

We turn to the claims pleaded by Cresci. The first four counts allege McNamara and Centinaro unlawfully issued a criminal summons against Cresci, used excessive force in arresting him, and provided insufficient medical care while he was in custody, all in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments,

5

42 U.S.C. §§ 1981, 1983, and 1985(2)–(3), and New Jersey Constitution Article I.[1] The fifth count alleges that the Defendants prevented Cresci from speaking, through lawsuits, about civil rights abuses, in violation of the First Amendment and 42 U.S.C. §§ 1983 and 2000e. The sixth count sets out a barebones conspiracy allegation. The seventh count alleges the Ethics Office and BCB Community Bank unlawfully attempted to collect a consumer debt from him in violation of 15 U.S.C § 1692. The eighth count asserts that, in connection with the earlier attorney disciplinary proceedings, the Ethics Office, BCB Community Bank, and Centinaro disclosed his banking information in violation of 15 U.S.C. § 6821, *et seq.* The ninth count claims all the defendants are an enterprise affecting commerce and extorted him in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. The final three counts allege state law torts. Cresci's complaint seeks money damages and asks for the "injunctive relief of expunging the complaint, enjoining further action of the Defendants[.]" Compl. 25. Anticipating possible abstention, it states that the facts show bad faith and that Cresci's alleged role as a confidential informant for the Federal Bureau of Investigation is an extraordinary circumstance.

Facing this potpourri of claims, the District Court *sua sponte* ordered Cresci to demonstrate why it should not abstain from exercising jurisdiction given what appeared to be pending attorney disciplinary proceedings against him. Unconvinced by Cresci's

---

[1] It is unclear how these persons arrested Cresci given that neither is part of the group of non-defendant officials who did arrest him. However, in *Cresci I* the District Court dismissed what appear to be the same claims brought by Cresci against the arresting officials. 2017 WL 1356322 at *11.

response, the Court saw this to be the "quintessential" situation in which the *Younger* abstention doctrine applies, and it stayed the action to allow the related state proceedings to conclude. App. 6, 7–8. It did not decide whether Cresci had established bad faith, harassment, or other extraordinary circumstances that would constitute an exception to *Younger* abstention. It did, however, grant him leave to move to reopen the action after demonstrating that he attempted to raise his federal arguments in the related state proceedings and exhausted the available state remedies.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. *See Lui v. Comm'n on Adult Entm't Establishments*, 369 F.3d 319, 325 (3d Cir. 2004). "We exercise plenary review over the legal determination of whether the requirements for abstention have been met. Once we determine that the requirements have been met, we review a district court's decision to abstain under *Younger* abstention principles for abuse of discretion." *Addiction Specialists, Inc. v. Twp. of Hampton,* 411 F.3d 399, 408 (3d Cir. 2005).

## III. Analysis

The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.,* 970 F.2d 1195, 2000 (3d Cir. 1992) (internal quotation marks omitted). A federal court should abstain under the *Younger* doctrine when there are (1) ongoing state proceedings that are judicial, (2) the proceedings implicate important state interests, and (3) the proceedings afford an

adequate opportunity to raise the federal claims. *See Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 435 (1982)). In these circumstances, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" *Middlesex County Ethics Comm.*, 457 U.S. at 435.

Cresci's complaint challenges the Ethics Office's ongoing investigations of attorney disciplinary grievances filed against him and seeks an injunction preventing further fact-gathering. The investigations are part of its attorney disciplinary proceedings. *Id.* at 426 (explaining that the New Jersey Supreme Court's "responsibility for licensing and disciplining attorneys" begins when the ethics committees "receive complaints relating to unethical conduct by an attorney"). As ongoing attorney disciplinary proceedings, they satisfy all three prongs of the *Younger* analysis. *Id.* at 436.

Cresci claims that the state attorney disciplinary proceedings do not afford him the opportunity to raise his *specific* federal claims. But the District Court determined that Cresci had not attempted to raise these issues in the state proceeding. In fact, he refuses to acknowledge the existence of any such proceeding. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Cresci has not cited any state procedural law that unambiguously prevents him from raising the federal issues.

Although the District Court did not consider whether the bad faith exception to *Younger* abstention was appropriate, there was no abuse of discretion. Cresci claims the state proceedings were solely to harass him, but he does not provide a basis to show that this is one of the "extraordinary circumstances" in which "the danger of irreparable loss is both great and immediate." *Younger*, 401 U.S. at 45. There is "no evidence that the disciplinary action against [Cresci] was frivolous, retaliatory, undertaken without a reasonable expectation of success, motivated by illegitimate considerations, or part of an 'unjustified and oppressive use of multiple prosecutions.'" *Feingold v. Off. of Disciplinary Couns.*, 487 F. App'x 743, 746 (3d Cir. 2012) (citing *Phelps v. Hamilton,* 59 F.3d 1058, 1065 (10th Cir. 1995)). The lack of evidence has much to do with his refusal to identify any past or present proceeding against him.

We do not decide whether the District Court properly abstained from considering the portions of Cresci's complaint challenging earlier, not-currently-pending, investigations, as he has not argued that these may be considered separately without interfering with the current proceedings. *See In re: Asbestos Prod. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017). The decision to stay the case and allow Cresci to bring these accompanying claims later was sound. *See Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988).

Last, Cresci's motion for default was properly denied in light of defendants' outstanding motion to extend time to answer or move to dismiss. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

For these reasons, we affirm the District Court's stay of Cresci's complaint.

9